UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
PROGRESSIVE NORTHERN INSURANCE COMPANY,

                            Plaintiff,

      - against -

DANIEL BELTEMPO, FRANCINE BELTEMPO,
PAMJAM, INC., JILCO EQUIPMENT LEASING
COMPANY, INC., DANA'S PRO TRUCKING, INC.,
TRAILMOBILE CORP., TRAILMOBILE PARTS AND
SERVICE CORP., THERMO KING CORP.,
INGERSOLL-RAND CO., LTD., and THERMO KING
CORP., A UNIT OF INGERSOLL-RAND COMPANY,
LTD.,

                           Defendants.
-------------------------------------------------------------------x

07-CV-4033 (CS)

**MEMORANDUM DECISION
AND ORDER**

Appearances

Philip A. Bramson, Esq.
Laurence J. Rabinovich, Esq.
Schindel, Farman, Lipsius, Gardner & Rabinovich, L.L.P.
New York, New York
*Counsel for Plaintiff*

Judith Treger Shelton, Esq.
Timothy E. Delahunt, Esq.
Kenney Shelton Liptak & Nowak, L.L.P.
Buffalo, New York
*Counsel for Defendant Dana's Pro Trucking Inc.*

Seibel, J.

      On April 23, 2007, Plaintiff Progressive Northern Insurance Company ("Progressive" or

"Plaintiff") filed a declaratory judgment action in New York State Supreme Court, Orange

County, against Defendants Daniel and Francine Beltempo; PamJam, Inc.; Jilco Equipment

Leasing Company, Inc.; Dana's Pro Trucking, Inc. ("DPT"); Trailmobile Corp.; Trailmobile

Parts and Service Corp.; Thermo King Corp.; Ingersoll-Rand Co., Ltd.; and Thermo King Corp,

a unit of Ingersoll-Rand Company, Ltd. (collectively, "Defendants").  Defendant DPT removed the case to this Court on May 22, 2007.  Before the Court is Plaintiff's Motion for Summary Judgment filed August 18, 2008.  (Doc. 21.)  For reasons discussed below, Plaintiff's Motion is denied.

I. Background

    A. Facts

The following facts are undisputed unless otherwise noted.  Progressive issued to Defendant PamJam a motor vehicle liability insurance policy (effective May 4, 2004, through May 5, 2005) (the "policy"), which included, among other things, coverage for "claims by third parties for 'accidents' occasioned by the ownership, maintenance and use of said insured vehicles."  (Compl. ¶¶ 20-21.)

Defendant PamJam was in the business of hauling produce in tractor-trailers.  On or about January 21, 2005, Defendant DPT lent to PamJam a trailer with a refrigerator unit, which was attached to a PamJam tractor.  Defendant Daniel Beltempo operated the tractor-trailer, and on the same date, was injured when he fell from the trailer (the "incident").[1]

In connection with the January 21, 2005 incident, Defendants Daniel and Francine Beltempo commenced a personal injury action on October 4, 2005, in Supreme Court, Orange County, against several of the defendants sued herein, including DPT (the "underlying action").  (*Id*. ¶¶ 25-26; *see Beltempo v. Dana's Pro Trucking, Inc. et al.*, No. 7209-2005.)  PamJam was not sued by the Beltempos in the underlying action.

---

[1] According to the Complaint, Defendant Daniel Beltempo was employed by PamJam at the time he was injured.  (Compl. ¶ 29.)  As discussed further below, this is disputed by DPT.

On March 7, 2006, Progressive received a letter from DPT's insurer, Northland Insurance, which stated: "It is our belief that your policy would have coverage for our insured. Accordingly, we are tendering the defense and indemnity of our insured to your company." (Certification of Steve L. Momon ("Momon Certif.") Ex. 1.)  On March 9, 2006, Progressive sent a letter to PamJam, which stated that Progressive was investigating the January 21, 2005 incident under a "*Reservation of Rights*," explaining that PamJam's "failure/delay in notifying us of this loss, appears to be a violation of the *notice* provision of your policy." (*Id*. Ex. 2 (emphasis in original).)

On March 19, 2006, Progressive sent identical disclaimer letters to PamJam and Northland Insurance, in which Progressive wrote: "I regret to inform you that your claim cannot be covered by Progressive . . . . The reason coverage cannot be provided is this claim was not reported to Progressive in a reasonable manner as outlined by the policy requirements." (*Id*. Ex. 3.)  The March 19 letters referred to the March 9 letter, which had been sent only to PamJam.

DPT commenced a third-party action against PamJam in the underlying action on April 14, 2006, seeking contribution and indemnification. (Compl. ¶¶ 27-28.)  Progressive was served with the third-party complaint in the underlying action on August 28, 2006, and on October 26, 2006, Progressive wrote a letter to PamJam, detailing the various bases upon which Progressive was disclaiming coverage for the January 21, 2005 incident. (Momon Certif. Ex. 4.)

B. Procedural History

Progressive filed the present action seeking a declaration that it is not required to provide PamJam with a defense or with indemnification for the January 21, 2005 incident. (Compl. ¶¶ 41-47.)  On August 18, 2008, Progressive filed a Motion for Summary Judgment, "seeking this

Court's declaration that a motor vehicle liability policy issued to defendant PamJam . . . provides no liability coverage for the third-party claims asserted against PamJam by defendant Dana's Pro Trucking Inc. . . . in an action which is pending in the Supreme Court of the State of New York, Orange County."  (Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") 1.)

According to Progressive, there is no coverage under the policy for the January 21, 2005 incident, and, therefore it is entitled to summary judgment in its favor, for two reasons:  (1) PamJam failed to give Progressive timely notice of the incident, and (2) coverage is barred by the employee exclusion to the policy.  (*Id.*)  PamJam has never made an appearance in this case (and is now apparently a defunct company), so it is DPT that opposes Plaintiff's Motion.

II. Discussion

    A. Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Id.*  On a motion for summary judgment, courts must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001) (internal quotation marks omitted).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue

of material fact. The burden then shifts to the non-moving party "to present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2); *accord Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). "Where a summary judgment motion is supported or opposed by affidavits, those 'affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(e)).

B. Analysis

1. Failure to Give Timely Notice of Loss

Pursuant to the policy issued by Progressive to PamJam, the following is among the insured's (PamJam's) duties: (1) "In the event of an accident or loss, report it to us as soon as practicable by calling our toll-free claims reporting number . . . . All accidents or losses should be reported even if an insured person is not at fault;" and (2) "Any person claiming coverage under this Policy must: . . . promptly send us any and all legal papers received relating to any claim or lawsuit; [and] . . . provide us with written notice of any legal action which such person has undertaken in regard to the accident for which coverage is sought." (Aff. of Timothy E. Delahunt in Opp'n to Progressive N. Ins. Co.'s Mot. for Summ. J. ("Delahunt Aff.") Ex. D at 1.)

Under New York law, where an insurance policy requires the insured to notify the insurer of an occurrence "as soon as practicable," "the absence of timely notice of an occurrence is a failure to comply with a condition precedent which, as a matter of law, vitiates the contract." *Argo Corp. v. Greater N.Y. Mut. Ins. Co.*, 4 N.Y.3d 332, 339 (2005); *accord Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 79 N.Y.2d 576, 578 (1992). The purpose of such notice provisions is to "afford the insurer an adequate opportunity to investigate, to prevent fraud and imposition upon it, and to form an intelligent estimate of its rights and liabilities before it is obliged to pay." *E. Baby Stores, Inc. v. Cent. Mut. Ins. Co.*, No. 07-CV-3890, 2008 U.S. Dist. LEXIS 43457, at *4 (S.D.N.Y. June 2, 2008) (internal quotation marks omitted); *accord Argo Corp.*, 4 N.Y.3d at 339. An insured must notify its insurance carrier of a "potential claim." *Prof'l Prod. Research Inc. v. Gen. Star Indem. Co.*, No. 06-CV-52703, 2008 U.S. Dist. LEXIS 52703, at *15 (S.D.N.Y. July 7, 2008) (internal quotation marks omitted). This obligation is "triggered by the insured's knowledge of events and circumstances which would suggest the possibility of a claim, not the actuality of a claim." *Id.* "[T]here may be circumstances that excuse a failure to give timely notice, such as where the insured has a good-faith belief of nonliability, provided that belief is reasonable." *N. Country Ins. Co. v. Jandreau*, 856 N.Y.S.2d 294, 295 (App. Div. 2008) (internal quotation marks omitted). The insured's belief in nonliability "must be reasonable under all the circumstances, and it may be relevant on the issue of reasonableness, whether and to what extent, the insured has inquired into the circumstances of the accident or occurrence." *Sec. Mut. Ins. Co. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 441 (1972). Notice must be given promptly "[o]nce knowledge suggests the possibility of a covered claim." *Prof'l Prod. Research Inc.*, 2008 U.S. Dist. LEXIS 52703, at *15.

It is not necessary for the insurer to demonstrate that it was prejudiced by untimely notice. *Argo Corp.*, 4 N.Y.3d at 339. Instead, the burden is on the insured to show that the delay was not unreasonable – *i.e.*, that there was a reasonable excuse for the delay.[2] *Id.* at 340; *see Sec. Mut. Ins. Co.*, 31 N.Y.2d at 441. "[T]he question of such reasonableness is generally a factual question for a jury." *Jandreau*, 856 N.Y.S.2d at 296. A court may, however, determine as a matter of law whether notice was given within a reasonable time when: "(1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay." *State of New York v. Blank*, 27 F.3d 783, 795 (2d Cir. 1994).

New York State Insurance Law § 3420(a)(3) provides that "notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any licensed agent of the insurer in this state, with particulars sufficient to identify the insured, shall be deemed notice to the insurer." The fact that injured parties and claimants have an independent right under New York State law to place an insurer on notice means that "the injured party or other claimant is not to be charged vicariously with the insured's delay." *Aetna Cas. & Sur. Co. v. Nat'l Union Fire Ins. Co.*, 674 N.Y.S.2d 685, 688 (App. Div. 1998). Thus "an injured third party may seek recovery from an insured's carrier despite the failure of the insured to provide timely notice of the accident." *Gen. Accident Ins. Group v. Cirucci*, 46 N.Y.2d 862, 863-64 (1979).

---

[2] Thus, DPT's argument that "Progressive's motion for summary judgment . . . fails to articulate a single reason why PamJam's allegedly late notice was unreasonable," (Dana's Pro Trucking, Inc.'s Mem. of Law in Opp'n to Progressive N. Ins. Co.'s Mot. for Summ. J. ("DPT Mem.") 7.), incorrectly assumes that the burden to do so is on Progressive, which is not the case under New York law. *See Argo Corp.*, 4 N.Y.3d at 340.

Here, it does not appear from the record that PamJam ever notified Progressive of the January 21, 2005 incident. Progressive did not learn of the incident (or the underlying lawsuit) until March 7, 2006, when it received a letter from DPT's insurance carrier, Northland Insurance. On August 28, 2006, Progressive was served with the third-party complaint that DPT filed against PamJam on April 14, 2006. DPT assumes for the sake of argument, as does the Court, that the notice provided to Progressive – over a year after the incident – was untimely under the terms of the policy.[3] (DPT Mem. 6.) DPT argues, however, that Progressive's disclaimer of coverage was invalid for three reasons, each of which will be discussed below.

### a. Reasonable Excuse

First, DPT argues that PamJam had a valid excuse for not providing Progressive with timely notice of the incident – specifically, that it was reasonable for PamJam to assume that the accident implicated its Workers' Compensation insurance rather than its third-party liability coverage with Progressive. (DPT Mem. 2, 6-8.)

New York courts have recognized that a good faith, reasonable belief that an incident would be covered by workers' compensation insurance may in some circumstances excuse late

---

[3] New York courts have held far shorter delays to be unreasonable as matter of law. *See, e.g.*, *Blank*, 27 F.3d at 796 (New York courts have routinely found delays of less than ten months – and even as short as twenty-nine days – to be unreasonable as a matter of law); *Am. Home Assurance Co. v. Republic Ins. Co.*, 984 F.2d 76, 78 (2d Cir. 1993) (collecting New York cases holding that delays ranging from ten to fifty-three days were unreasonable); *Prof'l Prod. Research Inc.*, 2008 U.S. Dist. LEXIS 52703, at *15 ("even periods of delay as short as two months have been found to be unreasonable as a matter of law"); *Crucible Materials Corp. v. Aetna Cas. & Sur. Co.*, 228 F. Supp. 2d 182, 195 (N.D.N.Y 2001) (same); *Myers v. Cigna Prop. and Cas. Ins. Co.*, 953 F. Supp. 551, 556-57 (S.D.N.Y. 1997) (sixty days not "as soon as practicable"); *Deso v. London & Lancashire Indem. Co. of Am.*, 143 N.E.2d 889, 891 (N.Y. 1957) (fifty-one days unreasonably late as a matter of law); *Heydt Contracting Corp. v. Am. Home Assurance Co.*, 536 N.Y.S.2d 770, 772-73 (App. Div. 1989) (four month delay unreasonable as a matter of law).

notice to an employer's liability insurance carrier.  *See, e.g.*, *Klersy Bldg. Corp. v. Harleyville Worchester Ins. Co.*, 828 N.Y.S.2d 661, 663 (App. Div. 2007) (denying summary judgment where employer explained his belief that accident would be covered by workers' compensation insurance; issue of reasonableness was for jury); *G.L.G. Contracting Corp. v. Aetna Cas. & Sur. Co.*, 626 N.Y.S.2d 307, 309 (App. Div. 1995) (denying summary judgment to liability carrier where employer claimed to believe accident would be covered by workers' compensation insurance; employer's credibility and reasonableness were issues for jury); *Cohoes Rod & Gun Club, Inc. v. Firemen's Ins. Co. of Newark, N.J.*, 521 N.Y.S.2d 836, 837 (App. Div. 1987) (issues of fact created by insured's deposition testimony that he and others believed no lawsuit was possible against his company based on existence of workers' compensation and other liability insurance carried by other company with which his company contracted); *Sabre v. Rutland Plywood Corp.*, 461 N.Y.S.2d 596, 598 (App. Div. 1983) (employer-insured's notice to liability carrier, which was three years after accident but only eight days after third-party suit was filed, was timely because insured was "entitled to rely on the exclusivity of the workers' compensation remedy provided to its employee and on the coverage of its workers' compensation policy, and was not required to anticipate that a third-party suit . . . would be brought against it").   While "[u]ntimely notice may be excused in certain circumstances, . . . such as where the insured . . . reasonably believed that it did not face liability," *J.J.J. Props. v. Travelers Indem. Co.*, No. 07-CV-135, 2008 U.S. Dist. LEXIS 51992, at *7 (S.D.N.Y. July 7, 2008), courts are generally less forgiving of untimely notice where the policy at issue requires notice to the insurance carrier even where the occurrence "may" result in liability to the insured, *see, e.g.*, *E. Baby Stores, Inc.*, 2008 U.S. Dist. LEXIS 43457, at *6 (delay based on insured's

belief that accident would be covered by worker's compensation insurance unreasonable as a matter of law because policy required notice of "any *'occurrence* which *may* result in a claim'" (emphasis in original)); *Heydt Contracting Corp.*, 536 N.Y.S.2d at 772-73 ("[insured]'s assumption that other parties would bear ultimate responsibility for [the incident] is insufficient as a matter of law to excuse the more than four-month delay in giving notice" where insured was aware of occurrence and policy "dictates that timely written notice be provided whenever a claim 'may' arise"). Here, the policy at issue goes even further, and requires that the insured provide notice to Progressive of "[*a*]*ll* accidents or losses . . . even if an insured person is not at fault." (Delahunt Aff. Ex. D at 1 (emphasis added).)

DPT cites to the depositions of Daniel Beltempo, James Slaughter (PamJam's general manager), and Joseph DiMartino (PamJam's president), taken in the underlying action, during which each of them stated that Daniel Beltempo was a PamJam employee at the time he was injured. (Beltempo Dep. 15; Slaughter Dep. 16; DiMartino Dep. 15-16.) Though this testimony certainly establishes their collective belief that Beltempo was a PamJam employee at the time of the incident, it does not address the issue of Workers' Compensation, let alone establish PamJam's good-faith belief in non-liability, or create any issues of fact regarding same.[4]

---

[4] On August 28, 2008, DPT's counsel wrote a letter to the Court (Doc. 27), asking permission to submit an affidavit from James Slaughter to supplement DPT's opposition. According to counsel, this affidavit would establish "as a matter of fact that Mr. Slaughter believed at the time of the underlying accident that it was a workers' compensation matter only that did not implicate his third-party liability insurance with Progressive." (Letter from Timothy E. Delahunt, Esq., to the Court, dated Aug. 28, 2008.) The Court gave counsel until September 19, 2008, to supplement the opposition with Mr. Slaughter's affidavit. On that date, counsel wrote another letter to the Court (Doc. 29), indicating that Mr. Slaughter refused to provide an affidavit on DPT's behalf in opposition to Progressive's Motion. (Letter from Timothy E. Delahunt, Esq., to the Court, dated Sept. 19, 2008.)

There is no evidence in the record from which a reasonable jury could find that the reason PamJam failed to notify Progressive of the incident was its belief that workers' compensation insurance would cover the loss, that PamJam did not believe a third-party suit would be filed against it, or that those beliefs, if they existed, were reasonable and held in good-faith.  Further, the facts that PamJam *never* notified Progressive of the incident or of the Third Party Complaint (with which PamJam was served in May 2006), and that Progressive did not learn that a third-party complaint had been filed against its insured until months later, in August 2006, strongly suggests that PamJam was acting in a dilatory manner, and not in accordance with any good-faith or reasonable belief in non-liability.

Further, DPT does not even argue (or put forth evidence suggesting) that DPT itself had a reasonable excuse for its own delay in notifying Progressive of the incident.  DPT did not notify Progressive of the incident until over a year after the accident occurred and five months after DPT was sued by Beltempo, and Progressive was not provided with DPT's Third-Party Complaint against PamJam until over four months after it was filed.  Without any evidence whatsoever to explain DPT's delay in notifying Progressive or to determine whether there was a reasonable excuse for the delay, the Court finds that DPT's notice was untimely as a matter of law.

In sum, the Court finds that the notice provided to Progressive was untimely as a matter of law and that DPT has failed to proffer any evidence that there was a reasonable excuse for the delay.

### b. Legally Insufficient Disclaimer to PamJam

Next, DPT claims that Progressive's disclaimer of coverage to PamJam was legally insufficient and ineffective because it was not sufficiently specific. (DPT Mem. 2, 8-9.) The Court need not spend much time on this argument. Because PamJam never provided any notice to Progressive of the January 21, 2005 incident or the April 14, 2006 Third-Party Complaint, Progressive was not obligated to provide PamJam with a disclaimer at all. *See Webster v. Mt. Vernon Fire Ins. Co.*, 368 F.3d 209, 214 (2d Cir. 2004) ("Because an insured has a contractual obligation under the policy to provide timely notice of a claim, the insurer does not become obligated to disclaim coverage until the insured provides notice.").

### c. Failure to Provide DPT with Notice of Disclaimer

Finally, DPT argues that Progressive failed to notify DPT of its disclaimer based on DPT's alleged late notice, and, therefore, "Progressive is precluded as a matter of law from asserting any coverage defense against [DPT] if and when [DPT] obtains a judgment against PamJam." (DPT Mem. 2, 9-11.)[5]

In its March 9, 2006 letter to PamJam, which was *not* sent to DPT, Progressive indicated that it had just been notified of the January 21, 2005 incident, and that the claim would be handled under a reservation of rights until Progressive could resolve certain coverage issues.

---

[5] New York Insurance Law § 3420(d)(2) provides:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

12

(Momon Certif. Ex. 2.)  The letter quoted from the notice provision of the policy and then stated that "*[y]our* failure/delay in notifying of us of this loss, appears to be a violation of the *notice* provision of your policy."  (*Id*. Ex. 2 (first emphasis added).)  On March 16, 2006, Progressive sent to PamJam and DPT identical disclaimer letters, which first referred to the "potential coverage problem" identified in the March 9, 2006 letter (which, again, was not sent to DPT), and then stated, "I regret to inform you that your claim cannot be covered by Progressive Northern Insurance.  The reason coverage cannot be provided is this claim was not reported to Progressive in a reasonable manner as outlined by the policy requirements."  (*Id*. Ex. 3.)  Neither DPT, nor the timeliness (or not) of the notice it provided to Progressive, is mentioned in these letters.

> Under New York law, to be effective, a
>> notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated. Absent such specific notice, a claimant might have difficulty assessing whether the insurer will be able to disclaim successfully. This uncertainty could prejudice the claimant's ability to ultimately obtain recovery. In addition, the insurer's responsibility to furnish notice of the specific ground on which the disclaimer is based is not unduly burdensome, the insurer being highly experienced and sophisticated in such matters.

*Cirucci*, 46 N.Y.2d at 864.

Whether an insurer has waived the late notice defense is typically a question of fact, but "New York courts have found waiver as a matter of law where the insurer has disclaimed on other grounds without mentioning late notice until a later date." *MCI LLC v. Rutgers Cas. Ins. Co.*, No. 06-CV-4412, 2007 U.S. Dist. LEXIS 59241, at *32 (S.D.N.Y. Aug. 13, 2007) (internal quotation marks omitted).  If an insurer "possesses actual or constructive knowledge of the

circumstances regarding a potential defense, yet asserts only other defenses, New York law deems the insurer, as a matter of law, to have intended to waive the unasserted defense." *Id.* at *24.

The Court finds Progressive's March 19, 2006 letter to DPT to be ineffective as a matter of law to disclaim coverage for the January 21, 2005 incident as to DPT on the basis of DPT's late notice. There is no mention of DPT in the purported disclaimer, and it is entirely lacking in the specifics clearly required under New York law. *See Cirucci*, 46 N.Y.2d at 864 ("high degree of specificity" required).[6] Because Progressive uniquely possessed knowledge of the grounds for and facts supporting disclaimer, and because Progressive is "highly experienced and sophisticated in such matters," *id.* at 864, its attempted disclaimer was wholly insufficient as to DPT. Therefore, regardless of the extent to which Progressive could have validly disclaimed because of DPT's late notice, that defense has been waived by Progressive's failure to properly disclaim on that basis. *See MCI LLC*, 2007 U.S. Dist. LEXIS 59241, at *36-37 (insurer found to have waived late notice defense as to claimant where disclaimer only mentioned untimeliness of insured's notice and did not mention timing of claimant's notice); *Cirucci*, 46 N.Y.2d at 863-64 (where disclaimer only referred to insured's late notice, disclaimer was ineffective as against third parties not mentioned); *Vacca v. State Farm Ins. Co.*, 790 N.Y.S.2d 177, 178 (App. Div. 2005) (disclaimer ineffective against injured party where insurer failed to cite injured party's late notice as ground for disclaimer); *Aetna Cas. & Surety Co. v. Rodriguez*, 496 N.Y.S.3d 956, 957

---

[6] Further, the March 19 letter's reference to the March 9 letter to PamJam – which focused on PamJam's failure to notify Progressive – also strongly suggests that the author of the March 19 letter intended to disclaim on the basis of PamJam's (not DPT's) failure to notify. Regardless of the author's intent, however, the letter did not, in any event, meet New York law's requirements for specifying the grounds for a disclaimer.

(App. Div. 1985) ("a notice of disclaimer . . . which only specifies the grounds of disclaimer against the insured . . . but does not specifically address the basis for disclaimer against the third-party claimant must be held to be inadequate for such purpose as to the latter").

### 2. Applicability of Employee Exclusion

The liability policy contains the following exclusion (the "employee exclusion"):

> Coverage under ["Liability to Others" provision of the policy] and our duty to defend does not apply to: . . . Bodily injury to an employee of an insured, or a spouse, child, parent, brother or sister of that employee, arising out of or within the course of employment, except with respect to a domestic employee if benefits are neither paid nor required to be provided under any Workers' Compensation, disability benefits or other similar law. This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

(Delahunt Aff. Ex. D at 8.) Progressive argues that, because Daniel Beltempo was injured in the course and scope of his employment with PamJam, the January 21, 2005 incident falls under the employee exclusion of the policy and is therefore not covered. (Pl.'s Mem. 5-6.)

The burden falls on the insurer to prove that an otherwise covered loss falls under the ambit of a policy exclusion. *See Morgan Stanley Group, Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 276 n.1 (2d Cir. 2000). This burden is a significant one; that is, to "negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*, 788 N.Y.S.2d 142, 144 (App. Div. 2004) (internal quotation marks omitted).

According to DPT, Progressive has failed to meet its burden of establishing that the exclusion applies here – in other words, that Beltempo was an employee of PamJam at the time he was injured.[7]  DPT points to the work-related accident report filed with the Workers' Compensation Board in connection with the January 21, 2005 incident, which identifies Beltempo's employer as DiMartino Farms.  (Delahunt Aff. Ex. K.)  The cover letter of the accident report was sent to DiMartino Farms, which has the same mailing address as PamJam and which is also the home address for Joseph DiMartino, president and owner of both PamJam and DiMartino Farms Snow Plowing.  (*Id.* Ex. K; DiMartino Dep. 10-15.)  The cover letter indicates that the form was prepared by someone in the customer service department of the New York State Insurance Fund, using information provided to it over the phone by James Slaughter, the general manager and secretary of PamJam.  (Delahunt Aff. Ex. K.)

When questioned about the form during his deposition in the underlying action, DiMartino testified, it was "explain[ed] to them that it was PamJam, not DiMartino Farms, . . . they just keep writing it as DiMartino Farms all the time," (DiMartino Dep. 16-17), and that Beltempo was a PamJam employee (*id.* 15-16).  When DiMartino was asked whether Beltempo

---

[7] DPT further claims that Progressive is precluded from raising the employee exclusion because it failed to raise it in its March 19, 2006 disclaimer letter.  (DPT Mem. 12.)  This argument is without merit.  "[A] defense based on lack of coverage is not subject to waiver under New York law."  *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 188 (2d Cir. 2006).  Thus, the waiver doctrine cannot be used to create coverage where none existed before.  *Coregis Ins. Co. v. Lewis, Johs, Avallone, Aviles & Kaufman, LLP*, No. 01-CV-3844, 2006 U.S. Dist. LEXIS 55326, at *40-41 (E.D.N.Y. July 28, 2006) ("where the issue is the existence or nonexistence of coverage (that is, the insuring clause and exclusions), the doctrine of waiver is simply inapplicable under New York law"); *Albert J. Schiff Assocs., Inc. v. Flack*, 417 N.E.2d 84, 87 (N.Y. 1980) ("Waiver evolved because of courts' disfavor of forfeitures of the insured's coverage which would otherwise result where an insured breached a policy condition, as, for instance, failure to give timely notice of a loss . . . .  This, however, does not create coverage, for the underlying coverage must be subsisting if the forfeiture is to serve any purpose.").

16

was an employee of DiMartino Farms Snow Plowing, he responded, "[a]bsolutely not." (*Id.* 16.) James Slaughter likewise testified that Beltempo was a PamJam employee. (Slaughter Dep. 16.) Beltempo also identified himself as a PamJam employee, both during his deposition testimony (Beltempo Dep. 15), and in his complaint in the underlying action. (Certification of Philip A. Bramson ("Bramson Certif.") Ex. A ¶ 37 ("That at all times hereinafter mentioned plaintiff DANIEL BELTEMPO was in course of his employment with PamJam, Inc.").) DPT adopted the same position in the third-party complaint it filed against PamJam in the underlying action: "That at all times mentioned and at all times referred to in the plaintiffs' complaint, the plaintiff, DANIEL BELTEMPO, was acting within the scope of his employment for the third-party defendant 'PAMJAM.'" (*Id.* Ex. B ¶ 15.)

Thus, while the weight of the evidence seems to suggest that Beltempo was a PamJam employee, there is evidence – the Workers' Compensation form containing information supplied by PamJam's general manager – to the contrary. On a motion for summary judgment, the Court is not to weigh the evidence, but rather simply to determine whether evidentiary conflicts exist. *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006). While Progressive may well be able to carry its burden of establishing that Beltempo was an employee, I cannot say as a matter of law that it has done so, especially in light of the puzzling failure of either side to produce documents – such as Beltempo's paychecks, W-2 forms, or tax returns – that might easily settle the matter.

III. Conclusion

For the reasons stated herein, Progressive's Motion for Summary Judgment is DENIED. The Clerk of Court is respectfully directed to terminate the pending Motion. (Doc. 21.) The Parties are directed to appear for a status conference on June 26, 2009, at 9:15 A.M., at which time the Court will set a date for trial on the issue of whether or not Beltempo was a PamJam employee.

Dated: May 13, 2009
       White Plains, New York

                                              _____
                                              CATHY SEIBEL, U.S.D.J.